Rule 23 order filed
March 24, 2010;
Motion to publish granted
April 9, 2010.

NO. 5-10-0123

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| RHONDA BARTLOW and JACK BARTLOW, d/b/a Jack's Roofing, RYAN TOWLE, d/b/a Jack's Siding and Windows, and CHARLES ERIC MODGLIN, | ) Appeal from the<br>) Circuit Court of<br>) Franklin County.<br>)<br>) |
|     Plaintiffs-Appellants, | )<br>) |
| v. | ) No. 10-CH-35<br>) |
| CATHERINE M. SHANNON, in Her Capacity as Director of Labor, State of Illinois, and LISA MADIGAN, in Her Capacity as Illinois Attorney General, | )<br>)<br>)<br>) Honorable<br>) Robert W. Lewis, |
|     Defendants-Appellees. | ) Judge, presiding. |

_____

JUSTICE STEWART delivered the opinion of the court:

This interlocutory appeal concerns ongoing investigations of the plaintiffs by the Illinois Department of Labor (the Department) pursuant to the Illinois Employee Classification Act (the Act) (820 ILCS 185/1 *et seq.* (West 2008)). On March 12, 2010, the plaintiffs–Rhonda Bartlow and Jack Bartlow, doing business as Jack's Roofing, Ryan Towle, doing business as Jack's Siding and Windows, and Charles Eric Modglin–filed a complaint in the circuit court of Franklin County, Illinois, for a declaratory judgment and for injunctive relief against the defendants–Catherine M. Shannon, in her capacity as the director of the Department, and Lisa Madigan, in her capacity as the Illinois Attorney General. The plaintiffs also filed a motion for a temporary restraining order (TRO) and for a preliminary injunction. The plaintiffs alleged in their complaint and in their motion that the Department is attempting to enforce the Act against them and that the Act violates the Illinois

1

Constitution and the United States Constitution and is, therefore, unenforceable. The defendants evidently received notice of the hearing on the request for a TRO, and all the parties presented argument. The Attorney General entered an appearance for the defendants but did not file an answer before the hearing. The circuit court denied the plaintiffs' request for a TRO, and the plaintiffs filed a timely notice of an interlocutory appeal pursuant to Illinois Supreme Court Rule 307 (188 Ill. 2d R. 307). For the following reasons, we reverse the circuit court's denial of a TRO.

BACKGROUND

Supreme Court Rule 307(d) provides an expedited timetable for a reviewing court to consider the denial of a TRO. 188 Ill. 2d R. 307(d). To appeal the denial of a TRO request, the petitioner must file a notice of appeal and a petition with the appellate court within two days of the denial of the TRO request, and the petitioner may also file a memorandum supporting the petition, along with the petition and a notice of appeal. 188 Ill. 2d R. 307(d)(1). The respondent must file any responding memorandum within two days following the filing of the notice of appeal. 188 Ill. 2d R. 307(d)(2). The appellate court is required to decide the petition within five days after the time for filing any responding memorandum has expired. 188 Ill. 2d R. 307(d)(4). "[T]he supreme court's intention in imposing the shorter time frame for appeals from the granting or denial of temporary restraining orders was to provide an expedited appeal process due to the nature of the temporary restraining order, an emergency remedy granted on a summary showing by the movant [citation]." *Friedman v. Thorson*, 303 Ill. App. 3d 131, 135-36 (1999). "Providing for an expedited appeal from the entry or denial of a temporary restraining order promotes the interests of justice by allowing the parties to more quickly reach the preliminary injunction hearing stage[,] where the court will better be able to determine the right of the moving party to the injunctive relief requested." *Friedman*, 303 Ill. App. 3d at 136.

2

In analyzing the circuit court's denial of a TRO in the present case, we first turn to the statutory and regulatory framework in which the Department conducts its investigations under the Act and determines whether a violation of the Act has occurred. The Act was enacted on January 1, 2008, and it establishes criteria to determine whether an individual performing services for a construction contractor is an employee of the contractor or is an independent contractor. Individuals performing services for contractors on or after January 1, 2008, are presumed to be employees of the contractor unless they meet criteria specified in section 10 of the Act. 820 ILCS 185/10 (West 2008). The Act seeks to ensure that workers in the construction industry are offered protections under numerous labor laws, including minimum wage, overtime, workers' compensation, and unemployment insurance, and are not misclassified as independent contractors in order to avoid tax and labor law obligations. 820 ILCS 185/3 (West 2008); 56 Ill. Adm. Code §240.100, adopted at 32 Ill. Reg. 13508, eff. July 31, 2008.

The Illinois Department of Labor is charged with the duty of enforcing the Act and the rules, regulations, and orders promulgated pursuant to the Act. 820 ILCS 185/25 (West 2008). An investigation under the Act begins by the filing of a complaint by any interested party or by the Department. 820 ILCS 185/25(a) (West 2008); 56 Ill. Adm. Code §240.200, adopted at 32 Ill. Reg. 13512, eff. July 31, 2008. Upon the filing of a complaint, the Department conducts a preliminary investigation to determine whether there is cause for an investigation. 56 Ill. Adm. Code §240.220(a), adopted at 32 Ill. Reg. 13512, 13513, eff. July 31, 2008. If the Department determines that there is cause for an investigation, the Department is obligated to conduct the investigation to determine whether a violation of the Act has occurred, and the Department may investigate using "any method or combination of methods deemed suitable at the discretion of the Department." 56 Ill. Adm. Code §240.300, adopted at 32 Ill. Reg. 13514, eff. July 31, 2008.

3

"Before making a final determination of a violation, the Department shall notify the contractors of the substance of the Department's investigation and afford the contractors an opportunity to present any written information, within 30 calendar days, for the Department to consider in reaching its determination." 56 Ill. Adm. Code §240.300(d), adopted at 32 Ill. Reg. 13514, eff. July 31, 2008. "As part of its investigation, the Department may convene a fact-finding conference in person or by telephone for the purpose of obtaining additional information or evidence, identifying the issues in dispute, ascertaining the positions of the parties[,] and exploring the possibility of settlement." 56 Ill. Adm. Code §240.310, adopted at 32 Ill. Reg. 13514, eff. July 31, 2008. Once the Department concludes its investigation and determines that a violation of the Act has occurred, the Department then may seek a voluntary settlement with the contractor; recommend the commencement of a civil action; issue a cease-and-desist order; assess civil penalties; collect denied or lost wages, salary, employment benefits, or compensation owed to the employee; place the contractor on a debarment list pursuant to section 42 of the Act (820 ILCS 185/42 (West 2008)); and/or take any other reasonable action to eliminate the unlawful practice and/or remedy the effect of the violation. 56 Ill. Adm. Code §240.510, adopted at 32 Ill. Reg. 13519, eff. July 31, 2008. The contractor can seek a review of the Department's final determination by filing a written request for an informal conference with the director of the Department. 56 Ill. Adm. Code §240.500(e), adopted at 32 Ill. Reg. 13518, 13519, eff. July 31, 2008. At the informal conference, the contractor can present written or oral information and arguments regarding why the Department's final determination should be amended or reconsidered. 56 Ill. Adm. Code §240.500(e)(1), adopted at 32 Ill. Reg. 13518, 13519, eff. July 31, 2008.

With this statutory and regulatory framework in mind, we turn to the plaintiffs' request for a TRO. The circuit court denied the plaintiffs' request for a TRO based on the plaintiffs' pleadings and affidavits before the court. Accordingly, for purposes of this interlocutory

4

appeal, we will assume as true all well-pleaded facts contained in the pleadings and affidavits in the record. See *Ambassador Foods Corp. v. Montgomery Ward & Co.*, 43 Ill. App. 2d 100, 101 (1963) ("Defendant appeared in the trial court[] but filed no pleading, so the case comes before us solely on the complaint. Under those circumstances, the facts properly pleaded will be considered as true"). The facts alleged in the pleadings and affidavits are as follows.

Rhonda and Jack Bartlow are spouses and general partners in a general partnership that has been doing business as Jack's Roofing since 1977. Jack's Roofing is in the business of entering into contracts for siding, window, seamless gutter, and roof installations. Ryan Towle and Charles Eric Modglin perform siding, window, and roof installation services for Jack's Roofing. The complaint alleges that Towle and Modglin are not employees of Jack's Roofing but are subcontractors and operate their own businesses as sole proprietors. Towle operates his sole proprietorship under the business name Jack's Siding and Windows.

On September 3, 2008, the Department sent Jack's Roofing a "notice of investigation and request for documents." The Department's request for documents sought documents concerning Jack's Roofing's relationship with Towle, Modglin, and other persons the Department "contends are or were [Jack's Roofing] employees." The investigation was identified as file No. 2009-CA-JD08-0017. On October 15, 2008, Jack's Roofing furnished the Department numerous documents, including certificates of subcontractor liability insurance, cancelled checks evidencing payments from Jack's Roofing to subcontractors, copies of bids by subcontractors for jobs available through Jack's Roofing, and copies of contracts between Jack's Roofing and subcontractors.

In April of 2009, Jack Dombrowski, a Department conciliator, conducted a telephone interview with Rhonda Bartlow and with various individuals who had contracted with Jack's Roofing. On February 16, 2010, the Department sent Jack's Roofing a "Notice of

5

Preliminary Investigative Findings" that stated that the Department had made a preliminary determination that Jack's Roofing "had failed properly to classify ten subcontractors in violation of the Act." The notice stated that Jack's Roofing "may be assessed a fine of $1,683,000" and requested Jack's Roofing to respond within 30 days of the date of the notice. The notice further stated, "[U]pon receipt and review of the response, [the Department] would issue a written decision informing the parties of the final determination in the matter." In addition, on March 1, 2010, the Department sent Jack's Roofing a notification of a second investigation "of a complaint regarding work done at 311 West Grand, Carterville, Illinois." In this notification, the Department requested the "production of documents within 15 calendar days of the date of the letter" and identified the investigation as file No. 2010-CA-RT12-0050.

Jack's Roofing, Towle, and Modglin filed their complaint for a declaratory judgment and for injunctive relief on March 12, 2010, and they alleged that the Department had not provided them an "opportunity for hearing," that their telephone calls to the Department requesting settlement discussions had not been returned, and that the Act and the pending investigations have created uncertainty concerning how they are to conduct their business.

The plaintiffs allege that the only way Jack's Roofing can prove current and past compliance with the Act is to provide information that can only be obtained from its subcontractors, including federal tax returns. Jack's Roofing maintains that there is no means to determine whether the Department will "concede it to be in compliance with the Act, without discontinuing its relationship with [its subcontractors] and hiring employees." Jack's Roofing alleges that it is "at risk of substantial penalties as a result of its lack of access to information that will enable it to prove that it is in compliance with the Act."

The plaintiffs' five-count complaint maintains that the Act violates the due process clauses of the Illinois Constitution and the United States Constitution, the special-legislation

6

clause of the Illinois Constitution, the equal protection clauses of the Illinois Constitution and the United States Constitution, and the prohibition of bills of attainder in the United States Constitution. The plaintiffs requested a TRO and a preliminary injunction against the Department to prevent the enforcement of the Act during the pendency of the action. The plaintiffs allege that immediate and irreparable harm will result if a determination by the Department is allowed to proceed without an opportunity for Jack's Roofing to be heard. "Immediate and irreparable harm," the plaintiffs allege, "will result if the Act is applied to assess a fine against [Jack's Roofing, when it is] in compliance with [the] requirements of the Act and/or is uncertain as to what is necessary in order to comply with the Act. The threatened fine of $1,683,000 will destroy [Jack's Roofing's] livelihood and subject its members to loss of all of their personal assets." In addition, the plaintiffs allege that immediate and irreparable harm would result if Jack's Roofing is required to discontinue its relationship with Towle, Modglin, and other subcontractors and to hire employees because of uncertainty regarding what is required in order to comply with the Act. The harm includes a loss of business goodwill, a loss of successful business relationships with its subcontractors, and a restriction of their freedom to operate a contracting business.

The plaintiffs' complaint requested the court to enjoin the enforcement of the Act until the court "declares the Act unconstitutional and, therefore, unenforceable or, in the alternative, declares what steps are necessary in order to provide certainty to [Jack's Roofing] as to what is necessary to ensure compliance with the Act." On March 15, 2010, the circuit court conducted a contested hearing on the plaintiffs' request for a TRO, at which the parties presented arguments in support of their positions. The court denied the TRO request. Pursuant to Illinois Supreme Court Rule 307 (188 Ill. 2d R. 307), the plaintiffs filed a timely notice of appeal for interlocutory review.

7

DISCUSSION

"A temporary restraining order is a drastic remedy which may issue only in exceptional circumstances and for a brief duration." *American Federation of State, County, & Municipal Employees v. Ryan*, 332 Ill. App. 3d 965, 966 (2002). A TRO's purpose is to preserve the status quo until the court conducts a hearing to determine whether it should grant a preliminary injunction. *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.*, 94 Ill. 2d 535, 541 (1983). To be entitled to temporary injunctive relief, plaintiffs must demonstrate that they (1) possess a protectable right, (2) will suffer irreparable harm without the protection of an injunction, (3) have no adequate remedy at law, and (4) are likely to be successful on the merits of their action. *Murges v. Bowman*, 254 Ill. App. 3d 1071, 1081 (1993). "The plaintiff is not required to make out a case which would entitle him to judgment at trial; rather, he only needs to show that he raises a 'fair question' about the existence of his right and that the court should preserve the status quo until the cause can be decided on the merits." *Stocker Hinge Manufacturing Co.*, 94 Ill. 2d at 542. Generally, we will affirm the trial court's denial of a temporary restraining order unless the trial court abused its discretion. *C.D. Peters Construction Co. v. Tri-City Regional Port District*, 281 Ill. App. 3d 41, 47 (1996). However, the standard of review is *de novo* on the issue of whether there is a "fair question" concerning the constitutionality of the Act. See *Caro v. Blagojevich*, 385 Ill. App. 3d 704, 708-09 (2008).

In the present case, the defendants argue that the circuit court did not abuse its discretion in denying the TRO because the Department has exclusive jurisdiction over the investigation under the Act and the plaintiffs cannot seek review in the courts without first exhausting all of their administrative remedies. We disagree.

The plaintiffs' complaint seeks a declaratory judgment concerning the constitutionality of the Act, and they requested a TRO and a preliminary injunction until the court can

8

determine the merits of their claim. Section 2-701(a) of the Code of Civil Procedure sets forth the general requirements for a justiciable declaratory judgment action, as follows:

"No action or proceeding is open to objection on the ground that a merely declaratory judgment or order is sought thereby. The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any statute *** or other governmental regulation *** and a declaration of the rights of the parties interested. The foregoing enumeration does not exclude other cases of actual controversy. The court shall refuse to enter a declaratory judgment or order[] if it appears that the judgment or order[] would not terminate the controversy or some part thereof[] giving rise to the proceeding." 735 ILCS 5/2-701(a) (West 2008).

As the Illinois Supreme Court has recognized, " ' "[T]he mere existence of a claim, assertion[,] or challenge to plaintiff's legal interests, *** which cast[s] doubt, insecurity, and uncertainty upon plaintiff's rights or status, damages plaintiff's pecuniary or material interests and establishes a condition of justiciability." ' " *Alternate Fuels, Inc. v. Director of the Illinois Environmental Protection Agency*, 215 Ill. 2d 219, 231 (2004) (quoting *First of America Bank, Rockford, N.A. v. Netsch*, 166 Ill. 2d 165, 175 (1995) (quoting *Roberts v. Roberts*, 90 Ill. App. 2d 184, 187 (1967))).

"Concepts of justiciability are divided into different categories, such as advisory opinions, feigned and collusive cases, standing, ripeness, mootness, political questions, and administrative questions." *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). With respect to ripeness, "[t]he basic rationale of the ripeness doctrine is to 'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract

9

disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.' " *Morr-Fitz, Inc.*, 231 Ill. 2d at 490 (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49, 18 L. Ed. 2d 681, 691, 87 S. Ct. 1507, 1515 (1967)). The issue of justiciability presents a question of law that we review *de novo*. *Morr-Fitz, Inc.*, 231 Ill. 2d at 488.

The Illinois Supreme Court has adopted a two-part test to evaluate ripeness, a test that was set forth by the United States Supreme Court in *Abbott Laboratories*: "[F]irst, courts look at whether the issues are fit for judicial decision; and second, they look at any hardship to the parties that would result from withholding judicial consideration." *Morr-Fitz, Inc.*, 231 Ill. 2d at 490 (citing *Abbott Laboratories*, 387 U.S. at 149, 18 L. Ed. 2d at 691, 87 S. Ct. at 1515).

In the present case, we believe that the plaintiffs' complaint is ripe under the two-part *Abbott Laboratories* test. With respect to the first prong of the test, we believe that the issues the plaintiffs raised in their complaint are fit for judicial decision because they are basically legal in nature, *i.e.*, whether the Act is constitutionally valid. See *Morr-Fitz, Inc.*, 231 Ill. 2d at 491-92 (citing *Minnesota Citizens Concerned for Life v. Federal Election Comm'n*, 113 F.3d 129, 132 (8th Cir. 1997) ("Fitness for judicial decision means, most often, that the issue is legal rather than factual")).

With respect to the second prong of the test, we find that a sufficient hardship exists to make judicial review appropriate. The plaintiffs argue that the Act and its regulations are unconstitutional and that the Department has threatened a possible fine of more than $1.6 million, among other sanctions, for violations of the Act without providing them with a meaningful opportunity to be heard. The plaintiffs allege that this uncertainty affects their business operations on a day-to-day basis, affects their business relationships and contracts,

10

and exposes them to very large fines. Jack's Roofing alleges that it will be forced to discontinue its relationships with its subcontractors or risk being fined millions of dollars. The plaintiffs allege that the Department's investigations under the Act and its enforcement of the Act will result in the loss of business goodwill, the loss of successful business relationships, and undue restrictions on the operation of their contracting business. We believe that this case is substantially similar to *Morr-Fitz, Inc.*, 231 Ill. 2d at 492, where the supreme court allowed a preenforcement challenge to an administrative rule that affected the plaintiffs' "business operations on a day-to-day basis and expose[d] plaintiffs to strong sanctions." This case is also similar to *Abbott Laboratories*, where the Court found that the plaintiffs could not be denied access to the courts under a ripeness theory, stating as follows: "[T]he regulation is directed at them in particular; it requires them to make significant changes in their everyday business practices; if they fail to observe the Commissioner's rule they are quite clearly exposed to the imposition of strong sanctions." *Abbott Laboratories*, 387 U.S. at 154, 18 L. Ed. 2d at 694, 87 S. Ct. at 1518.

The Act and the regulations give the Department authority to conduct its investigation by any method or combination of methods it deems suitable at its discretion. The Department has not given any indication that it intends to conduct an administrative hearing on the plaintiffs' alleged violations of the Act before it concludes its investigation. In their complaint, the plaintiffs raise constitutional challenges, but the Act and its regulations appear not to provide any administrative hearing during which the plaintiffs can raise these challenges prior to the Department concluding its investigation and finding them in violation of the Act. Under these circumstances, we believe that a preenforcement challenge by way of a declaratory judgment proceeding is proper. *Hays v. City of Urbana*, 104 F.3d 102, 103 (7th Cir. 1997) ("Long ago, the Supreme Court held that a person who must comply with a law or face sanctions has standing to challenge its application to him, even if the threat of

11

prosecution is not immediate–indeed, even if the law is not yet in effect"). We believe that the plaintiffs' complaint raises a justiciable controversy.

We also believe that the circuit court abused its discretion in denying the plaintiffs' TRO request. The plaintiffs' five-count complaint maintains that the Act violates, among other constitutional provisions, the due process clauses of the Illinois Constitution and the United States Constitution. We believe that the plaintiffs have raised a "fair question" concerning whether the Act violates procedural due process, because the Act and the procedures promulgated pursuant to the Act do not appear to provide an accused with a meaningful opportunity to be heard. Since the plaintiffs have raised a fair question concerning their procedural due process rights, we need not address whether the other constitutional contentions also raise a fair question.

Notice and an opportunity to be heard are necessary principles of procedural due process. *People ex rel. Illinois Commerce Comm'n v. Operator Communication, Inc.*, 281 Ill. App. 3d 297, 302 (1996). "Due process of law is served where there is a right to present evidence and argument in one's own behalf, a right to cross-examine adverse witnesses, and impartiality in rulings upon the evidence which is offered." *Piotrowski v. State Police Merit Board*, 85 Ill. App. 3d 369, 373 (1980) (citing *Lakeland Construction Co. v. Department of Revenue*, 62 Ill. App. 3d 1036, 1040 (1978)).

"Before a person is deprived of a protected interest, he must be afforded opportunity for some kind of a hearing, 'except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.' " *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 n.7, 33 L. Ed. 2d 548, 556 n.7, 92 S. Ct. 2701, 2705 n.7 (1972) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379, 28 L. Ed. 2d 113, 119, 91 S. Ct. 780, 786 (1971)). A fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v.*

12

*Manzo*, 380 U.S. 545, 552, 14 L. Ed. 2d 62, 66, 85 S. Ct. 1187, 1191 (1965).

In the present case, our review of the Act and the Department's regulations indicates that neither the Act nor the regulations that the Department has implemented for enforcing the Act appear to provide an accused with a meaningful hearing prior to the Department finding a violation of the Act. We believe that the plaintiffs have raised a fair question concerning whether due process requires the Department to provide an administrative hearing when there exists a dispute concerning material facts before it can assess fines and penalties or seek other sanctions or remedies against Jack's Roofing. The supreme court has stated that there is "no doubt" that administrative proceedings are governed by the fundamental principles and requirements of due process. *Balmoral Racing Club, Inc. v. Illinois Racing Board*, 151 Ill. 2d 367, 405 (1992).

The due process analysis begins with a determination of whether a protectable interest–in life, liberty, or property–exists. *Balmoral Racing Club, Inc.*, 151 Ill. 2d at 405. We believe that the present controversy involves a protectable property interest. The fines at issue, obviously, involve a protectable interest in property. In addition, the plaintiffs' contractual relationships are also protectable property interests. "To have a constitutionally protected property interest, a plaintiff must show that he has a legitimate claim of entitlement to it." *Akmakjian v. Department of Professional Regulation*, 287 Ill. App. 3d 894, 896 (1997). "A legitimate claim of entitlement may arise from statute, regulation, municipal ordinance, or express or implied contract." *Akmakjian*, 287 Ill. App. 3d at 896. We hold that the remedies the Department may utilize against a contractor under the Act invoke issues involving the contractor's protectable property interests which cannot be invoked without affording the contractor procedural due process.

However, it appears to us that the Act and its regulations may allow for the assessment of penalties and sanctions against an accused contractor without providing basic due process

13

protections. The Department is charged with the responsibility of investigating alleged violations of the Act and can conduct its investigation by any means it deems desirable. Although the regulations require the Department to give the accused notice and an opportunity to submit written information, there appears to be no procedure under the regulations that would allow the contractor an opportunity to confront its accusers, to examine witnesses, to testify, to present witnesses, and to inspect the evidence offered against it. Procedural due process is lacking where the State does not provide these minimum guarantees. *Balmoral Racing Club, Inc.*, 151 Ill. 2d at 408. Although due process is a flexible concept, these minimum guarantees must be provided to ensure that an administrative tribunal provides a fair and impartial hearing. *Balmoral Racing Club, Inc.*, 151 Ill. 2d at 408.

The Department argues that the Act meets the requirements of procedural due process because any party can request an informal conference after the Department issues its final determination and the contractor may present written or oral information and arguments. This procedure, however, does not provide the contractor with an opportunity to confront accusers, examine witnesses, or inspect the evidence offered against it. The Act and its regulations authorize the Department to issue a cease-and-desist order; assess civil penalties; collect monies for wages, salary, and employment benefits; and "[t]ake any other reasonable action to eliminate the unlawful practice and/or remedy the effect of the violation" (56 Ill. Adm. Code §240.510(g), adopted at 32 Ill. Reg. 13519, 13520, eff. July 31, 2008). Accordingly, it appears that the Department can levy significant fines, penalties, and sanctions merely upon its own determination that a violation of the Act has occurred, without ever affording the contractor a meaningful hearing.

The Act provides that the civil penalties assessed by the Department, as well as any other relief requested, are recoverable in an action brought in the name of the people of the

14

State of Illinois by the Attorney General. 820 ILCS 185/25(b) (West 2008). Once the Department makes its final determination that a violation has occurred, it may recommend the commencement of a civil action. 56 Ill. Adm. Code §240.510, adopted at 32 Ill. Reg. 13519, eff. July 31, 2008. However, the Act does not specify what the Department's burden of proof would be in that action, and the Act and its regulations grant the Department the power to "[t]ake any other reasonable action to eliminate the unlawful practice and/or remedy the effect of the violation" (56 Ill. Adm. Code §240.510(g), adopted at 32 Ill. Reg. 13519, 13520, eff. July 31, 2008). The plaintiffs, therefore, have raised a fair question concerning whether this statutory and regulatory scheme provides adequate procedural due process.

The Illinois legislature has enacted the Illinois Administrative Procedure Act (5 ILCS 100/1-1 *et seq.* (West 2008)), which addresses procedural due process concerns in administrative hearings, and section 10-5 of the Illinois Administrative Procedure Act requires all agencies to adopt rules establishing procedures for contested case hearings (5 ILCS 100/10-5 (West 2008)). In compliance with the Illinois Administrative Procedure Act, the Department has enacted regulations that establish the rules of procedure in administrative hearings before the Department involving "contested cases." 56 Ill. Adm. Code §120.100 *et seq.*, amended at 30 Ill. Reg. 10428, eff. May 24, 2006. These procedural rules afford parties with a meaningful opportunity to be heard and provide the minimum guarantees that must be provided to ensure that an administrative tribunal provides a fair and impartial hearing.

It appears that the Act and its regulations were drafted in such a way that the Department is not required to comply with the Illinois Administrative Procedure Act or comply with the Department's own regulations for administrative hearings. Indeed, in its reply memorandum filed in this interlocutory appeal, the Department does not claim that it is bound by the procedural protections afforded by the Illinois Administrative Procedure Act

15

or the Department's rules of procedure in administrative hearings. Accordingly, the plaintiffs' procedural due process claim presents a fair question, since the Department's fact-finding investigations and enforcement sanctions under the Act appear to fall outside the procedural protections normally afforded to persons subject to administrative investigations and administrative penalties.

In order to be entitled to a TRO, the plaintiffs, in addition to presenting a fair question concerning their right to relief, must also establish irreparable harm and no adequate remedy at law. We believe that the plaintiffs have met these requirements for a TRO as well. As noted above, for purposes of this interlocutory appeal, we must consider the well-pleaded allegations of the complaint as true. The plaintiffs alleged that immediate and irreparable harm to Jack's Roofing's relationships with its subcontractors will occur without a TRO, due to the threat of a $1.6 million penalty and the uncertainty of the pending investigations. Jack's Roofing has alleged that it would be required to discontinue its relationships with its skilled subcontractors and would suffer a diminution in the value of the business. See *Austin Congress Corp. v. Mannina*, 46 Ill. App. 2d 192, 195-96 (1964) (the grant of a TRO was a proper exercise of discretion on the basis of allegations that the nursing home owner's property, business, reputation, and goodwill would be substantially damaged if the picketing continued). Because of the potential harm to the plaintiffs' businesses, they have an inadequate remedy at law. See *Prentice Medical Corp. v. Todd*, 145 Ill. App. 3d 692, 701 (1986) ("It is reasonable to infer that plaintiffs may suffer a consequent loss of good will and damage to their competitive position and that defendant's actions will be of a continuing nature. As a result plaintiffs sufficiently established a threat of irreparable harm"). We believe that a TRO is necessary in this case to prevent a continuing injury to the plaintiffs' businesses until the circuit court can hear the merits of their request for a preliminary injunction. A TRO in this case will preserve the status quo with the least injury to the parties

16

concerned. See *Limestone Development Corp. v. Village of Lemont*, 284 Ill. App. 3d 848, 853 (1996) ("[T]he status quo, which is the last actual, peaceable, uncontested status preceding the controversy, is to be preserved with the least injury to the parties").

Pursuant to our authority under Illinois Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)), we remand this case to the circuit court with directions to enter a TRO in favor of the plaintiffs. The TRO shall enjoin the Department from enforcing the Act only against the plaintiffs; it shall not enjoin the Department from conducting investigations under the Act or otherwise enforcing the Act against anyone not a party to this lawsuit.

TROs that are granted without notice to the adverse party must expire within 10 days. 735 ILCS 5/11-101 (West 2008). "The obvious purpose behind the 10-day limitation is not present when the adverse party has notice and the opportunity of a hearing." *Kable Printing Co. v. Mount Morris Bookbinders Union Local 65-B*, 63 Ill. 2d 514, 521 (1976). In the present case, the Department has had the opportunity for a hearing. Accordingly, the circuit court's TRO shall remain in effect until the circuit court conducts a full hearing on the plaintiffs' request for a preliminary injunction.

CONCLUSION

For the foregoing reasons, we reverse the order of the circuit court denying the plaintiffs' motion for a TRO, and we remand with directions for the circuit court to enter a TRO in favor of the plaintiffs enjoining the Department from enforcing the Act against the plaintiffs until the court can conduct a hearing on the plaintiffs' motion for a preliminary injunction.

Reversed; cause remanded with directions.

WELCH and DONOVAN, JJ., concur.

17

NO. 5-10-0123

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| RHONDA BARTLOW and JACK BARTLOW, d/b/a Jack's Roofing, RYAN TOWLE, d/b/a Jack's Siding and Windows, and CHARLES ERIC MODGLIN, | ) ) ) ) | Appeal from the Circuit Court of Franklin County. |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 10-CH-35 |
| | ) | |
| CATHERINE M. SHANNON, in Her Capacity as Director of Labor, State of Illinois, and LISA MADIGAN, in Her Capacity as Illinois Attorney General, | ) ) ) ) | Honorable Robert W. Lewis, |
| Defendants-Appellees. | ) | Judge, presiding. |

---

**Rule 23 Order Filed**:      March 24, 2010
**Motion to Publish Granted**:      April 9, 2010
**Opinion Filed**:      April 9, 2010

---

**Justices**:      Honorable Bruce D. Stewart, J.

     Honorable Thomas M. Welch, J., and
     Honorable James K. Donovan, J.,
     Concur

---

**Attorneys for Appellants**      Jana Yocom, Terry Sharp, The Sharp Law Firm, P.C., 1115 Harrison, P.O. Box 906, Mt. Vernon, IL 62864

---

**Attorneys for Appellees**      Lisa Madigan, Attorney General of Illinois, Michael A. Scodro, Solicitor General, Mary E. Welsh, Assistant Attorney General, 100 West Randolph Street, 12th Floor, Chicago, IL 60601

---