2026 IL App (1st) 242135

FIFTH DIVISION
June 18, 2026

No. 1-24-2135

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| DANIEL SOLANO, on Behalf of Plaintiff and a Class, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 2023CH02916 |
| THE CITY OF CHICAGO, | ) ) ) | The Honorable Michael T. Mullen, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE WILSON delivered the judgment of the court, with opinion.
Presiding Justice Mitchell and Justice Oden Johnson concurred in the judgment and opinion.

**OPINION**

¶ 1                                    I. BACKGROUND

¶ 2     Plaintiff Daniel Solano is a commercial truck driver. On March 20, 2023, the City of Chicago (City) issued a citation to Solano alleging that he was operating an overweight tractor-trailer. Specifically, the citation stated Solano's tractor-trailer weighed 26,000 pounds, 16,000 pounds over the applicable limit, in violation of section 9-72-080 of the Chicago Municipal Code (Municipal Code). Chicago Municipal Code § 9-72-080 (amended Dec. 20, 2025). The citation fined Solano $2,655 and informed him that he could request a hearing at the Chicago Department

of Administrative Hearings (DOAH).

¶ 3 On March 27, 2023, Solano filed this lawsuit in the Circuit Court of Cook County, challenging DOAH's authority to adjudicate his weight violation. Solano contends that Chicago may not administratively adjudicate weight violations carrying fines over $250. In counts I and II of Solano's original complaint, he asserted that the Illinois Municipal Code barred the City from administratively adjudicating weight violations. In counts III and IV, Solano asserted that certain provisions of the Illinois Vehicle Code (625 ILCS 5/11-208.2, 11-208.3 (West 2024)) barred the City from imposing fines exceeding $250 for administratively adjudicated overweight vehicle offenses. Solano also filed a hearing request before DOAH (Docket No. 23CS000884). On May 10, 2023, the DOAH matter was continued by agreement of the parties.

¶ 4 While this case was pending in the circuit court, the supreme court decided *Cammacho v. City of Joliet*, 2024 IL 129263, holding that section 1-2.1-2 of the Illinois Municipal Code (65 ILCS 5/1-2.1-2 (West 2020)) does not preempt a municipality's home rule authority to administratively adjudicate violations of its ordinances. *Cammacho*, 2024 IL 129263, ¶ 31. Solano then amended his complaint to remove counts I and II which were based on the Illinois Municipal Code.

¶ 5 Solano's amended complaint, which is the operative pleading before us, contains two counts: count I for declaratory relief and count II for unjust enrichment. Count I seeks a "declaration that all provisions of the Municipal Code of the City of Chicago that enabled the collection of fines, penalties and other amounts in excess of $250 for violation of ordinances governing operation of vehicles through administrative adjudication are void for exceeding what is permissible under the Vehicle Code[.]" Count II asserts that the City has been unjustly enriched because it collected fines exceeding the statutory limits set forth in the Vehicle Code. Solano brings

the claims individually and on behalf of a putative class of individuals fined more than $250 for weight violations through DOAH hearings.[1]

¶ 6    On June 10, 2024, the City moved to dismiss both of Solano's remaining claims. First, the City argued under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2024)) that the claims were not ripe because no hearing has occurred and no fine has been imposed. Second, the City argued under section 2-615 of the Code of Civil Procedure (*id.* § 2-615) that the claims fail on the merits because the City has home rule authority to conduct administrative hearings for weight violations carrying fines over $250.

¶ 7    On September 26, 2024, following a hearing, Judge Michael T. Mullen granted the City's motion to dismiss with prejudice. The circuit court ruled that the City "adjudicates overweight vehicle violations pursuant to its home rule authority consistent with its constitutional authorization to do just that." The court further ruled that the City's home rule "authority to enter administrative determinations of liability for overweight vehicle violations was not preempted by section 11-208.2" of the Vehicle Code (625 ILCS 5/11-208.2 (West 2024)). According to the circuit court, "the City's [home rule] authority to set fines and penalties for administratively adjudicated overweight vehicle violations is not capped at $250[.]" As a result, Judge Mullen granted the City's 2-615 motion and dismissed Solano's claim for declaratory judgment. The circuit court also dismissed the claim for unjust enrichment because it was dependent on the conclusion that the City lacked authority to hold hearings for weight violations carrying fines over $250. Having dismissed all claims on the merits, the court denied the City's section 2-619 motion

---

[1]Section 208.3 contains two separate caps on fines and penalties: a $250 cap and a $500 cap. See 625 ILCS 5/11-208.3(a), (b)(10) (West 2024). Plaintiff assumes that the $250 cap would apply here. The City states it is currently litigating which of these caps applies to certain ordinance violations in Blaha v. City of Chicago, No. 2018-CH-08945 (Cir. Ct. Cook County). We do not resolve the issue, as the fine here is well above either cap.

to dismiss—based on the argument that the claims were not ripe—as moot. Solano timely appealed the final dismissal pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 8                                    II. ANALYSIS

¶ 9      A motion to dismiss filed under section 2-615 (735 ILCS 5/2-615 (West 2024)) "attacks the legal sufficiency of the complaint based upon defects appearing on the face of the complaint." *Compton v. Country Mutual Insurance Co.*, 382 Ill. App. 3d 323, 325-26 (2008). The question on appeal is "whether the allegations in the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted." (Internal quotation marks omitted.) *Vogt v. Round Robin Enterprises, Inc.*, 2020 IL App (4th) 190294, ¶ 14. This court will affirm dismissal if "no set of facts can be proven which would entitle the plaintiff to the relief sought." (Internal quotation marks omitted.) *Id.*

¶ 10      We review the dismissal of a complaint *de novo*. *Maddux v. Blagojevich*, 233 Ill. 2d 508, 513 (2009). We "may affirm the dismissal if the record supports a proper ground for dismissal," regardless of whether the trial court relied on that ground. *Station Place Townhouse Condominium Ass'n v. Village of Glenview*, 2022 IL App (1st) 211131, ¶ 26.

¶ 11      We address two issues under the *de novo* standard of review: (1) justiciability of Solano's claims and (2) DOAH's ability to adjudicate pursuant to home rule authority. First, we consider justiciability, although the circuit court did not address it. We analyze justiciability using the doctrines of ripeness and exhaustion of administrative remedies and hold that Solano's challenge to DOAH's jurisdiction is fit for our review. We note that, because no administrative decision or fine has been issued, the question of enforcement is premature, and we take no position on the enforcement mechanisms available to the City in the event that they attempt to enforce a fine against Solano in the future.

¶ 12    Second, having found that the question of whether or not DOAH has jurisdiction is properly before us, we conclude that DOAH's authority to adjudicate weight violations arises from Chicago's home rule powers and is not expressly limited by the Vehicle Code. As a result, the circuit court properly dismissed count I (declaratory judgment). Further, because DOAH's authority is not expressly limited by the Vehicle Code, count II (unjust enrichment) also fails. Thus, we affirm the judgment of the circuit court dismissing both remaining counts of Solano's complaint with prejudice.

¶ 13                                    A. Justiciability

¶ 14    Courts have developed the concept of justiciability to identify appropriate occasions for court action. *Alternate Fuels, Inc. v. Director of the Illinois Environmental Protection Agency*, 215 Ill. 2d 219, 230 (2004). Section 2-701 of the Code of Civil Procedure (735 ILCS 5/2-701 (West 2024)) sets forth the general requirements of a justiciable declaratory action under Illinois law. This section provides that a court may,

> "in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, *** of the construction of any statute, municipal ordinance, or other governmental regulation, *** and a declaration of the rights of the parties interested. *** The court shall refuse to enter a declaratory judgment or order, if it appears that the judgment or order, would not terminate the controversy or some part thereof, giving rise to the proceeding." *Id.* § 2-701(a).

¶ 15    We are required to construe the declaratory judgment statute liberally and avoid unduly technical interpretations. *Alternate Fuels, Inc.*, 215 Ill. 2d at 230. The mere existence of a claim or challenge to plaintiff's legal interests that creates uncertainty about plaintiff's rights establishes a

condition of justiciability. *Id.* at 231. Justiciability includes several sub-categories, including advisory opinions, standing, ripeness, mootness, and administrative questions. *Id.* at 230. Here the relevant sub-categories of justiciability are ripeness and administrative questions. We will discuss each in turn.

¶ 16                                          1. *Ripeness*

¶ 17     We begin with ripeness because the City sought dismissal under section 2-619 (735 ILCS 5/2-619 (West 2024)) on the ground that Solano's claims are not ripe. The City argues we must dismiss for lack of ripeness because DOAH has not yet held a hearing and the City has not yet imposed any fines against Solano. "[I]n the context of a challenge to an administrative action, we specifically consider ripeness, a component of justiciability." *Alternate Fuels, Inc.*, 215 Ill. 2d at 231. The ripeness doctrine prevents courts from "entangling themselves in abstract disagreements" and protects agencies from court interference "until an administrative decision has been formalized" and its effects felt by the parties. (Internal quotation marks omitted.) *Bartlow v. Shannon*, 399 Ill. App. 3d 560, 568 (2010).

¶ 18     To determine ripeness, we apply the two-part *Morr-Fitz* test. *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 490 (2008). Under the first prong, we consider whether the issue is fit for judicial decision, which generally means that the issue is legal rather than factual. *Bartlow*, 399 Ill. App. 3d at 569. Under the second prong, we consider any hardship that would result from withholding judicial consideration. *Morr-Fitz*, 231 Ill. 2d at 490.

¶ 19     Here, the *Morr-Fitz* factors favor ripeness. Turning to the first prong, the question of DOAH's authority to adjudicate weight violations is fit for judicial decision because it is a legal, rather than a factual, question. *Bartlow*, 399 Ill. App. 3d at 569. At issue here is whether Municipal Code section 9-72-080(a) constitutes a standing or parking violation that is subject to a $250 cap

on fines for administrative hearings. Chicago Municipal Code § 9-72-080(a) (amended Dec. 20, 2025). Both sides have approached this matter in terms of statutory construction, and there is no dispute over the facts leading up to the $2,665 citation. Thus, Solano has satisfied the first *Morr-Fitz* prong with respect to DOAH's authority, as this is a legal question fit for judicial decision.

¶ 20    Turning to the second *Morr-Fitz* prong, we consider any hardship to the parties that would result from withholding judicial consideration. *Morr-Fitz*, 231 Ill. 2d at 490. "[I]f the harm that a plaintiff claims is merely speculative or contingent, the claim is unripe and a court should not decide it." *Smart Growth Sugar Grove, LLC v. Village of Sugar Grove*, 375 Ill. App. 3d 780, 789 (2007). Here, the hardship Solano faces is sufficient to render judicial review appropriate at this stage. The City argues that because Solano has not yet been assessed a fine, he has not suffered harm. The City ignores the fact that Solano received a citation making him liable for a $2,655 fine if he takes no further action. The $2,665 fine is neither speculative nor contingent. Moreover, the City fails to address the significant difference between a $250 fine and a $2,655 fine. Solano contends that the large size of the fine caused him to retain counsel to support his defense, which he would not have done if only $250 was at stake. Given the amount of the fine, Solano made a rational choice to expend additional resources (as we suspect others in a similar situation would do) to hire counsel and file a challenge before DOAH. If we withhold consideration, many other commercial truck drivers will face the same alleged hardship that Solano claims he now faces. Thus, Solano has satisfied the second *Morr-Fitz* prong where he claims that he was forced to expend his resources to defend against a citation over which he argues DOAH lacks authority.

¶ 21                    2. *Exhaustion of Administrative Remedies*

¶ 22    Our inquiry does not end with ripeness; we next consider whether Solano is nevertheless required to exhaust the administrative remedies available to him before the courts are permitted to

intervene. Our supreme court has recognized that the "principles of ripeness and exhaustion of remedies are closely related" because both involve whether an action is premature. *Beahringer v. Page*, 204 Ill. 2d 363, 375 (2003). Though ripeness and exhaustion are related, they are distinct doctrines with separate analysis required. See *Morr-Fitz*, 231 Ill. 2d at 490-504 (analyzing ripeness and exhaustion doctrines separately and holding that the cause of action is ripe but must be dismissed for failure to exhaust administrative remedies).

¶ 23    "The doctrine of exhaustion of remedies is a judicially created doctrine that precludes a party from seeking review in the courts without first pursuing all administrative remedies available." (Internal quotation marks omitted.) *Board of Education of Park Forest-Chicago Heights School District No. 163 v. Houlihan*, 382 Ill. App. 3d 604, 611 (2008). The exhaustion doctrine applies where an agency is vested with authority to administer a statute. *Beahringer*, 204 Ill. 2d at 375. The purposes of the exhaustion doctrine are, among other things, to allow the agency to fully develop and consider the facts, to give the affected party the opportunity to succeed before the agency, and to "allow[ ] the agency to correct its own errors, thus conserving valuable judicial resources." *Id.* This court "generally requires strict compliance" with the exhaustion doctrine. *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 308 (1989).

¶ 24    There are several recognized exceptions to the exhaustion doctrine, including where (1) a statute or ordinance is attacked as unconstitutional on its face, (2) multiple administrative remedies exist and at least one is exhausted, (3) the agency cannot provide an adequate remedy, (3) no issues of fact are presented or agency expertise is not involved, (4) irreparable harm will result, or (5) an agency's jurisdiction is attacked because it is not authorized by statute. *Id.* at 308-09. Here, the relevant exception is jurisdiction because Solano asserts DOAH does not have jurisdiction to hear weight violations carrying fines over $250. An agency's jurisdiction is a legal issue for which a

party is not required to exhaust administrative remedies. *Hawthorne v. Village of Olympia Fields*, 204 Ill. 2d 243, 254 (2003) (challenges to a municipality's jurisdiction are not subject to the exhaustion doctrine); *County of Kane v. Carlson*, 116 Ill. 2d 186, 199 (1987) (same). Thus, to the extent that Solano is challenging DOAH's jurisdiction, he is not required to exhaust his administrative remedies before a court may intervene.

¶ 25    However, Solano's arguments are not limited to DOAH's jurisdiction. In addition to the jurisdictional challenge, Solano also asserts that DOAH's enforcement mechanisms are limited. At oral argument, Solano took the position that unless there is a statute granting the City authority to turn a DOAH decision into an enforceable judgment, the City must adjudicate the weight violation in circuit court. We acknowledge that DOAH's jurisdiction and the City's ability to enforce DOAH decisions are closely related. However, jurisdiction and enforcement are not one and the same. It is "important to distinguish the issue of enforceability from the issue of jurisdiction due to the constitutional protections on home rule unit authority." *Cammacho*, 2024 IL 129263, ¶ 43 n.10. Put another way, the availability of a particular enforcement mechanism is not determinative of an agency's jurisdiction. *Id.* ¶ 38.

¶ 26    Having separated the issues of jurisdiction and enforcement, we next consider whether a challenge to a particular enforcement mechanism nevertheless falls under one of the exceptions to the exhaustion doctrine. Considering the recognized exceptions to the exhaustion doctrine outlined in *Castaneda*, the closest exception that might apply is "where no issues of fact are presented or agency expertise is not involved." *Castaneda*, 132 Ill. 2d at 309.

¶ 27    Solano argues that because the City uses the adjudicatory pathway set forth in Vehicle Code section 11-208.3 to convert administrative orders into circuit court judgments, the section 11-208.3 fee cap of $250 must apply. At oral argument, the City denied that it uses the section 11-

208.3 pathway and maintained that it regulates weight violations pursuant only to its constitutional home rule authority. The adjudicatory pathway the City uses for enforcement is an issue of fact that is not currently resolved (at least on the record before us).

¶ 28    Because DOAH has not held a hearing yet on Solano's citation, we do not know the outcome of the hearing. We do not know whether a fine over $250 will ever be imposed against Solano. We do not know whether the City will attempt to convert any fine that it does impose into a circuit court judgment. In other words, there is an issue of fact as to whether the City will be relying on the adjudicatory pathway set forth in Vehicle Code section 11-208.3 to convert administrative orders into circuit court judgments. "This court cannot pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events." *Stokes v. Pekin Insurance Co.*, 298 Ill. App. 3d 278, 281 (1998). A determination on the issue of enforcement for a fine that may never be assessed is exactly the kind of "legal advice as to future events" that we are prohibited from issuing. *Id.*

¶ 29    We note that our supreme court has recognized that "[a] request for modifications to an administrative decision by a home rule municipality *** may be proper if such modifications are necessary to clarify that the decision does not have the force and effect of a court judgment." *Cammacho*, 2024 IL 129263, ¶ 38 n.9. We take no position on whether any such request would be appropriate here.

¶ 30    Finally, we acknowledge that this is a putative class action including people upon whom DOAH has already imposed fines exceeding $250 for weight violations within the past five years. However, in the context of a putative class action, we consider only whether the named plaintiff's claims are justiciable, not those of the putative class. See *Petta v. Christie Business Holdings Co., P.C.*, 2025 IL 130337, ¶¶ 23-25. Here, Solano is the only named plaintiff in this putative class.

Although members of the putative class have purportedly had fines levied against them, we do not know whether those fines were converted into circuit court judgments. Thus, the existence of the putative class members does not serve to make the enforcement question appropriate for our review.

¶ 31     Having found Solano's challenge to DOAH's jurisdiction is ripe for judicial review and not subject to the exhaustion requirement, we next consider whether DOAH has home rule authority to hear Solano's challenge to the weight violation citation.

¶ 32               B. DOAH's Authority Pursuant to Chicago's Home Rule Powers

¶ 33     DOAH's jurisdiction flows from Chicago's home rule authority. Home rule powers are construed liberally and may be limited only by express statutory language. *Lintzeris v. City of Chicago*, 2023 IL 127547, ¶ 22. Chicago has broad authority under its home rule powers to establish administrative agencies. *Austin Gardens, LLC v. City of Chicago Department of Administrative Hearings*, 2018 IL App (1st) 163120, ¶ 19. Pursuant to Chicago's home rule power provided by the Illinois Constitution (Ill. Const. 1970, art. VII, § 6(a)), the city created DOAH to conduct administrative adjudication proceedings. *Austin Gardens*, 2018 IL App (1st) 163120, ¶ 19. The City gave DOAH express authority to adjudicate weight violations. Chicago Municipal Code § 9-72-100(a) (added Dec. 7, 2005) ("[A]fter the issuance of any citation for a violation of any weight limitations imposed by this chapter, *** the owner or operator may file a written request for a hearing before [DOAH] ***."). Thus, we begin with the presumption that DOAH has jurisdiction to issue decisions about weight violations found in the Municipal Code of Chicago.

¶ 34     Although we presume DOAH has jurisdiction, the presumption may be overcome if the state legislature has preempted the powers of a home rule unit. *Lintzeris*, 2023 IL 127547, ¶ 22. To preempt the exercise of a home rule unit's powers, the state legislature must use language that

11

"expressly" limits the home rule authority. *Id.*; *Cammacho*, 2024 IL 129263, ¶ 22 ("[T]he City's home rule authority to administratively adjudicate its city ordinance violations must be construed liberally but can be limited by the General Assembly by statute. [Citations.] However, such statutory limitations must be expressly stated."). DOAH's jurisdiction turns on whether the state legislature has expressly limited Chicago's home rule authority to conduct administrative hearings about violations of Chicago's weight limitation ordinance.

¶ 35    Whether the legislature has expressly limited Chicago's home rule authority is a question of statutory interpretation. Our primary goal when interpreting the language of a statute is to ascertain and give effect to the intent of the legislature. *Devoney v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 199 Ill. 2d 414, 424-25 (2002) (Freeman, J., dissenting). Legislative intent is best derived from the language of the statute itself, which, if unambiguous, should be enforced as written. *Id.* at 425. The plain language of a statute is the most reliable indication of legislative intent. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). When the language of the statute is clear, it must be applied as written without resort to aids or tools of interpretation. *Id.*

¶ 36    Solano argues that, through Vehicle Code sections 11-208.2 and 11-208.3 (625 ILCS 5/11-208.2, 11-208.3 (West 2024)), the Illinois legislature has expressly limited Chicago's home rule authority to have administrative hearings for weight violations. We disagree. Solano's argument is premised on the assumption that Municipal Code section 9-72-080(a) fits into one of the five violation categories outlined in Vehicle Code section 11-208.3: standing, parking, compliance, redlight camera, or speed enforcement camera violations. We do not share this assumption.

¶ 37    Instead, we consider whether Vehicle Code section 11-208.3 (*id.* § 11-208.3) applies to the limitations found in Municipal Code section 9-72-080. We begin with the language of section 9-

72-080(a). We must determine the type of violation described in section 9-72-080(a) in order to know if it falls within one of the five types covered by Vehicle Code section 11-208.3. Municipal Code section 9-72-080(a) provides:

> "Except as specifically allowed by statute or other ordinance, no operator shall permit to remain on any public way within the city any motor vehicle whose gross weight exceeds the limits described in Section 15-111 of the Illinois Vehicle Code, [625] ILCS 5/15-111. The weight limitations and formulae contained in Section 15-111 of the Illinois Vehicle Code, [625] ILCS 5/15-111, are hereby incorporated by reference for purposes of calculating permissible weights under this section." Chicago Municipal Code § 9-72-080(a) (amended Dec. 20, 2025).

¶ 38    Vehicle Code section 15-111, which is incorporated by reference into Municipal Code section 9-72-080(a), governs wheel loads, axle loads, and "gross weights" of vehicles. 625 ILCS 5/15-111(a) (West 2024). Chapter 15 of the Vehicle Code as a whole contains provisions related to "Size, Weight, and Load Permits." *Id.* §§ 15–100 to 15–319. Thus, on its face, the plain language of Municipal Code section 9-72-080(a) is describing a weight violation. See *DeLuna*, 223 Ill. 2d at 59. The language of the regulation clearly refers to a weight violation because Municipal Code section 9-72-080(a) (Chicago Municipal Code § 9-72-080(a) (amended Dec. 20, 2025)) regulates "gross weight," and Vehicle Code section 15-111 (625 ILCS 5/15-111(a) (West 2024)) governs loads and "gross weights" of vehicles. Chicago Municipal Code section 9-72-080(a) makes no reference to "standing," "parking," or any provision within Vehicle Code Chapter 11.

¶ 39    Having determined that Municipal Code section 9-72-080(a) is a weight violation, we next consider whether Vehicle Code section 11-208.3(a) expressly applies to limit weight violations. Vehicle Code section 11-208.3(a) states:

"Any municipality or county may provide by ordinance for a system of administrative adjudication of vehicular standing and parking violations and vehicle compliance violations as described in this subsection, automated traffic law violations as defined in Section 11-208.6, 11-208.9, or 11-1201.1, and automated speed enforcement system violations as defined in Section 11-208.8." *Id.* § 11-208.3(a).

¶ 40 Section 11-208.3(a) recognizes the following five categories: (1) standing, (2) parking, (3) compliance, (4) automated traffic law (red light camera), and (5) automated speed enforcement system (speed camera) violations. *Id.* Solano's argument presumes that the weight violations outlined in Municipal Code section 9-72-080 must fit into one of the five violation categories. Solano concedes that the weight violations are not compliance, automated traffic law, or automated speed enforcement violations. The crux of Solano's argument is that the Municipal Code section 9-72-080 weight violations fall under the umbrella of Vehicle Code section 11-208.3 standing or parking violations, and, therefore, Chicago's home rule authority has been expressly limited by the state legislature.

¶ 41 Solano's theory would reclassify weight violations as "standing" or "parking" violations under Chapter 11. Solano argues the 2011 amendment to Municipal Code section 9-72-080 (Chicago Municipal Code § 9-72-080(a) (amended July 6, 2011) (changing the language from "operate" to "permit to remain")) transformed the weight violation into a standing or parking violation for purposes of Vehicle Code Chapter 11, thus triggering the home rule limitation on the fee amount. Solano's argument ignores the fact that the Illinois Vehicle Code explicitly recognizes weight violations as a type of violation separate from standing or parking violations. In section 6-204 of the Vehicle Code the legislature clearly distinguishes between the categories of standing,

14

parking, and weight violations:

> "Whenever any person is convicted of any offense under this Code or similar offenses under a municipal ordinance, other than *regulations governing standing, parking or weights of vehicles* \*\*\* it shall be the duty of the clerk of the court in which such conviction is had within 5 days thereafter to forward to the Secretary of State a report of the conviction and the court may recommend the suspension of the driver's license or permit of the person so convicted." (Emphasis added.) 625 ILCS 5/6-204(a)(2) (West 2024).

¶ 42    The legislature thus has recognized standing, parking, and weights of vehicles as three unique categories of violations under the Vehicle Code. "[T]his court should give independent meaning to all words in the statute." *In re Kelan W.*, 2021 IL App (5th) 210029, ¶ 12, *aff'd*, 2022 IL 128031. We must construe a statute so as not to render any term superfluous. *People v. O'Malley*, 2021 IL App (5th) 190127, ¶ 39. If we were to interpret a weight violation to be merely a subset of standing or parking violations, it would make the phrase "weights of vehicles" in section 6-204(a)(2) superfluous. We decline to adopt such an interpretation.

¶ 43    Moreover, the legislature distinguishes between standing, parking, and weight violations in the very structure of the Vehicle Code itself. Vehicle Code Chapter 15 is dedicated to weight, size, and permit violations, while Chapter 11 does not discuss vehicle weight and instead governs the "Rules of the Road," including standing and parking. 625 ILCS 5/ch. 11 (West 2024) ("Chapter 11. Rules of the Road"). Vehicle Code section 11-208.3 makes no reference to the term "weight" or the provision of Chapter 15. *Id.* § 11-208.3 (containing 32 instances of the term "standing," 33 of "parking," and zero of "weight" or "Chapter 15"). Thus, the plain language of section 11-208.3 contains no express limit on the adjudication of weight violations.

¶ 44    Having determined that Vehicle Code section 11-208.3 does not contain an express limitation related to weight violations, we next consider whether Vehicle Code section 11-208.2 contains such a limitation. Vehicle Code section 11-208.2 states: "Limitation on home rule units. The provisions of this Chapter of this Act limit the authority of home rule units to adopt local police regulations inconsistent herewith except pursuant to Sections 11-208, 11-209, 11-1005.1, 11-1412.1, and 11-1412.2 of this Chapter of this Act." *Id.* § 11-208.2.

¶ 45    Notably, Vehicle Code section 11-208.2 makes no reference to any subsections outside of those found in Chapter 11 ("Rules of the Road"). Nor does it contain the term "weight" or refer to any provision of Vehicle Code Chapter 15. If the legislature had wanted to expressly limit home rule authority to administratively adjudicate weight violations, it could have done so in Chapter 15, or Vehicle Code section 11-208.3 could have referenced Chapter 15 or used the word "weight" violations. It has done none of those things. Because the legislature recognizes weight violations as a separate type of violation, unrelated to standing or parking, and the Chapter 11 sections have no express, specific application to weight violations, those sections fail to limit Chicago's home rule unit's authority regarding weight violations. See *Lintzeris*, 2023 IL 127547, ¶ 22 (requiring an "express statement" from the legislature to limit or deny the exercise of a home rule unit's powers). Solano has pointed to no other statute that limits Chicago's authority to hold administrative hearings for weight violations, nor are we aware of any.

¶ 46    We determine that the Illinois legislature has not adopted an express statement anywhere in Vehicle Code Chapter 11 that would apply to weight violations. Because Municipal Code section 9-72-080 describes a weight violation, we determine that the legislature has not limited DOAH's jurisdiction to hold hearings about weight violations brought under section 9-72-080. *Cammacho*, 2024 IL 129263, ¶ 23 ("if a statute does not expressly state that there is a limitation

on home rule units specifically, the concurrent exercise of governmental power by a home rule unit will not be read to be restricted"). Thus, DOAH retains jurisdiction to hear weight violations under section 9-72-080. On this basis, we affirm the judgment of the circuit court dismissing count I (declaratory judgment).

¶ 47    As pled, Solano's claim of unjust enrichment is solely premised on the argument that DOAH lacks authority to administratively adjudicate the citation he received. Count II (unjust enrichment) rises and falls with count I (declaratory judgment). On this basis, we affirm the judgment of the circuit court dismissing count II (unjust enrichment).

¶ 48                              III. CONCLUSION

¶ 49    We affirm the dismissal of count I (declaratory judgment) because the Vehicle Code contains no express limitation that would preempt DOAH's authority to hear weight violations enumerated in Municipal Code section 9-72-080. We affirm the dismissal of count II (unjust enrichment) because it is dependent on a finding in count I that DOAH lacks jurisdiction. We express no judgment on the issue of the enforcement mechanisms available to the City because the issue is not properly before us.

¶ 50    Affirmed.

*Solano v. City of Chicago*, **2026 IL App (1st) 242135**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2023-CH-02916; the Hon. Michael T. Mullen, Judge, presiding. |
| **Attorneys for Appellant:** | Daniel A. Edelman, Tara L. Goodwin, Heather Kolbus, and Caileen M. Crecco, of Edelman, Combs, Latturner & Goodwin, LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Mary B. Richardson-Lowry, Corporation Counsel, of Chicago (Myriam Zreczny Kasper, Suzanne M. Loose, and Alexandra Weiss, Assistant Corporation Counsel, of counsel), for appellee. |