# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***Bartlow v. Costigan*, 2012 IL App (5th) 110519**

| | |
|---|---|
| Appellate Court Caption | RHONDA BARTLOW and JACK BARTLOW, d/b/a Jack's Roofing, RYAN TOWLE, d/b/a Jack's Siding and Windows, and CHARLES ERIC MODGLIN, Plaintiffs-Appellants, v. JOSEPH COSTIGAN, in His Capacity as Director of Labor, State of Illinois, Defendant-Appellee. |
| District & No. | Fifth District<br>Docket No. 5-11-0519 |
| Filed<br>Rehearing denied | August 21, 2012<br>September 20, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Illinois Employee Classification Act, which establishes criteria for determining whether an individual performing services for a construction contractor is an employee or an independent contractor, is not facially unconstitutional under the due process clause, it does not improperly delegate legislative authority, it is not unconstitutionally vague, and it does not violate the equal protection clause or the prohibition against special legislation. |
| Decision Under Review | Appeal from the Circuit Court of Franklin County, No. 10-CH-35; the Hon. Robert W. Lewis, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Jana Yocom, of Jana Yocom, P.C., of Mt. Vernon, for appellants.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Mary E. Welsh, Assistant Attorney General, of counsel), for appellee.

Marc R. Poulos, Melissa L. Binetti, and Kara M. Principe, all of Indiana, Illinois, Iowa Foundation for Fair Contracting, of Countryside, *amicus curiae*.

Panel

JUSTICE STEWART delivered the judgment of the court, with opinion.

Justices Goldenhersh and Chapman concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal concerns the constitutionality of the Illinois Employee Classification Act (the Act) (820 ILCS 185/1 to 999 (West 2008)). On March 12, 2010, the plaintiffs, Rhonda Bartlow and Jack Bartlow, doing business as Jack's Roofing, Ryan Towle, doing business as Jack's Siding and Windows, and Charles Eric Modglin, filed a complaint in the circuit court of Franklin County, Illinois, for a declaratory judgment and for injunctive relief against the defendant, Joseph Costigan, in his capacity as the Director of the Illinois Department of Labor[1] (the Department). The plaintiffs alleged in their complaint that the Department is attempting to enforce the Act against them, but the Act is facially unconstitutional and unenforceable. The circuit court granted the Department's motion for a summary judgment. We affirm.

¶ 2                            BACKGROUND

¶ 3    The Act was enacted on January 1, 2008, and it establishes criteria to determine whether an individual performing services for a construction contractor is an employee of the contractor or is an independent contractor. The Act seeks to ensure that workers in the construction industry are offered protections under numerous labor laws, including minimum wage, overtime, workers' compensation, and unemployment insurance, and are not misclassified as independent contractors by the contractor in order to avoid tax and labor law

---

[1]As a matter of law, Joseph Costigan, the current Director of the Illinois Department of Labor, has been substituted as a party in place of Catherine M. Shannon, the originally named defendant and Costigan's predecessor. 735 ILCS 5/2-1008(d) (West 2010).

obligations. 820 ILCS 185/3 (West 2010); 56 Ill. Adm. Code 240.100 (2008).

¶ 4 Rhonda and Jack Bartlow are spouses and general partners in a general partnership that has been doing business as Jack's Roofing since 1977. The Bartlows are in the business of installing siding, windows, seamless gutters, and roofs. Ryan Towle and Charles Eric Modglin perform siding, window, and roof installation services for the Bartlows. The Bartlows maintain that Towle and Modglin are not their employees, but are subcontractors who operate their own businesses as sole proprietors. At the time of the lawsuit, the Department was investigating whether the Bartlows had misclassified Towle, Modglin, and others as independent contractors when they should have been classified as employees under the Act.

¶ 5 On September 3, 2008, the Department sent the Bartlows a "notice of investigation and request for documents." The Department's request for documents sought documents concerning their relationship with Towle, Modglin, and other persons who the Department "contends are or were [Jack's Roofing] employees," not subcontractors. The investigation was identified as "File Number: 2009-CA-JD08-0017." On October 15, 2008, the Bartlows furnished the Department numerous documents it had requested. They did not have possession of documents related to the capitalization of their subcontractors, information concerning other customers of the subcontractors, or the subcontractors' income tax compliance. In April 2009, a conciliator working for the Department conducted a telephone interview with Rhonda Bartlow and with various individuals who had contracted with the Bartlows.

¶ 6 On February 16, 2010, the Department sent the Bartlows a "Notice of Preliminary Investigative Findings," stating that it had made a preliminary determination that the Bartlows "had failed properly to classify ten subcontractors in violation of the Act." The notice also stated that the Bartlows "may be assessed a fine of $1,683,000" and requested a response within 30 days of the date of the notice. The notice further stated that "upon receipt and review of the response, [the Department would] issue a written decision informing the parties of the final determination in the matter."

¶ 7 On March 1, 2010, the Department sent the Bartlows a notification of a second investigation "of a complaint regarding work done at 311 West Grand, Carterville, Illinois." In this second notification, the Department requested "production of documents within 15 calendar days of the date of the letter" and identified the second investigation as "File No. 2010-CA-RT12-0050."

¶ 8 On March 12, 2010, the Bartlows, Towle, and Modglin filed a complaint against the Department, requesting a declaratory judgment and injunctive relief. They alleged that the Department had not provided them an "opportunity for hearing," that their telephone calls to the Department requesting settlement discussions had not been returned, and that the Act and the pending investigations have created uncertainty concerning how they are to conduct their business.

¶ 9 The plaintiffs' five-count complaint maintained that the Act violates the due process clauses of the United States and Illinois Constitutions, the special legislation clause of the Illinois Constitution, the equal protection clauses of the United States and Illinois

Constitutions, and the prohibition of bills of attainder in the United States Constitution. The plaintiffs also filed a motion for a temporary restraining order (TRO) and a preliminary injunction, requesting the court to enjoin the enforcement of the Act during the pendency of the action.

¶ 10    On March 15, 2010, the circuit court conducted a contested hearing on the plaintiffs' request for a TRO and denied the motion. The plaintiffs filed an interlocutory appeal pursuant to Illinois Supreme Court Rule 307 (eff. Feb. 26, 2010). On March 25, 2010, on the expedited timetable required by Rule 307(d), we reversed the circuit court's denial of the plaintiffs' TRO request. *Bartlow v. Shannon*, 399 Ill. App. 3d 560, 927 N.E.2d 88 (2010). We concluded that the plaintiffs' complaint raised a "fair question" concerning whether the Act violated procedural due process by granting the Department the power to assess fines, penalties, and sanctions without affording the plaintiffs with a meaningful hearing. *Id.* at 571, 927 N.E.2d at 98. We did not determine the merits of the plaintiffs' due process claim, only that it raised a "fair question." In addition, we did not address any of the plaintiffs' other constitutional claims. We remanded the case and directed the circuit court to enter a TRO until it conducted a full hearing on the plaintiffs' request for a preliminary injunction.

¶ 11    On remand, the plaintiffs did not request a hearing on their motion for a preliminary injunction. Instead, the plaintiffs and the Department each filed cross-motions for summary judgment, and the parties agreed that no evidentiary hearing was necessary to determine the plaintiffs' constitutional issues. On October 20, 2011, the circuit court entered a memorandum of decision with respect to the parties' cross-motions for a summary judgment, finding that the Act did not violate the guarantees of due process and equal protection or the prohibitions against special legislation and bills of attainder.

¶ 12    The court noted in its memorandum that the Act granted the Department the power to assess penalties and sanctions and that there is no provision in the Act for any type of administrative hearing. However, the court ruled as follows:

"The instant case presents a facial challenge only. No as applied challenge is presented in Plaintiffs' Second Amended Complaint. The Department is not precluded from giving Plaintiffs notice and a hearing if it so chooses. Therefore, *** the court finds [the Act] is not facially unconstitutional."

¶ 13    On November 14, 2011, the circuit court entered its final order based on its memorandum of decision. The court's final order found that the Act was not unconstitutional special legislation, did not violate the equal protection clause of the Illinois or United States Constitution, does not constitute a bill of attainder, and is not facially unconstitutional under the due process clauses of the United States and Illinois Constitutions. The court entered a judgment on all counts of the plaintiffs' complaint in favor of the Department. The plaintiffs filed a timely notice of appeal.

¶ 14                                    DISCUSSION

¶ 15    The plaintiffs argue that the circuit court erred in granting the Department's motion for summary judgment and denying their motion for summary judgment because the Act is facially unconstitutional under both the due process and equal protection clauses of the

United States and Illinois Constitutions. The plaintiffs also argue that the Act is an unconstitutional special legislation in violation of the Illinois Constitution. The plaintiffs appeal the circuit court's judgment granting a summary judgment in favor of the Department on their constitutional challenges and denying their motion for summary judgment.

¶ 16 "Summary judgment is proper when the pleadings, depositions, and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Schultz v. Illinois Farmers Insurance Co.*, 387 Ill. App. 3d 622, 625, 901 N.E.2d 957, 960 (2009). "The court must construe the evidence strictly against the movant and liberally in favor of the opponent." (Internal quotation marks omitted.) *Gatlin v. Ruder*, 137 Ill. 2d 284, 293, 560 N.E.2d 586, 589 (1990). The review of the grant of summary judgment is *de novo*. *Ioerger v. Halverson Construction Co.*, 232 Ill. 2d 196, 201, 902 N.E.2d 645, 648 (2008).

¶ 17 In addition, applicable to our review in the present case, we note that the constitutionality of a statute is a question of law that we review *de novo*. *Irwin Industrial Tool Co. v. Department of Revenue*, 238 Ill. 2d 332, 340, 938 N.E.2d 459, 465 (2010). "Statutes are presumed to be constitutional, and we must construe a statute so as to uphold its constitutionality if it is reasonably possible to do so. The party challenging the validity of a statute has the burden of clearly establishing a constitutional violation." *Id.*

¶ 18                                          I.

¶ 19                    The Statutory and Regulatory Framework of the Act

¶ 20 We begin our analysis of the constitutionality of the Act by first outlining the statutory and regulatory framework of the Act. As noted above, the Act is designed to address problems in the construction industry that arise when contractors improperly classify employees as independent contractors in order to avoid certain laws and regulations that are designed to protect employees. The Act grants the Department the power to conduct investigations in connection with the administration and enforcement of the Act and provides that the Department has the duty to enforce the provisions of the Act. 820 ILCS 185/25 (West 2008).

¶ 21                                          A.

¶ 22                      The Department's Investigatory Powers

¶ 23 An investigation under the Act begins when an interested party files a complaint with the Department against an employer if there is a reasonable belief that the employer is in violation of the Act. 820 ILCS 185/25 (West 2008). The Department itself may also file a complaint alleging a violation of the Act. 56 Ill. Adm. Code 240.200 (2008).

¶ 24 Upon the filing of a complaint, the Department reviews the complaint to determine whether there is cause for an investigation. 56 Ill. Adm. Code 240.220(a) (2008). If the Department determines that there is cause for an investigation, it is obligated to investigate to ascertain the facts relating to the alleged violation and determine whether a violation has occurred. 56 Ill. Adm. Code 240.300 (2008). The Department may investigate using "any

method or combination of methods deemed suitable at the discretion of the Department." 56 Ill. Adm. Code 240.300 (2008). "The investigation shall include a written notice to the contractor of the substance of the complaint and an opportunity to present any information the contractor wishes the Department to consider in reaching its determination." 56 Ill. Adm. Code 240.300 (2008). If a contractor refuses to cooperate with an investigation, "the Department may make a finding that the Act has been violated based upon the evidence available to the Department." 56 Ill. Adm. Code 240.300(a) (2008).

¶ 25 "Before making a final determination of a violation, the Department shall notify the contractors of the substance of the Department's investigation and afford the contractors an opportunity to present any written information, within 30 calendar days, for the Department to consider in reaching its determination." 56 Ill. Adm. Code 240.300(d) (2008). "As part of its investigation, the Department may convene a fact-finding conference in person or by telephone for the purpose of obtaining additional information or evidence, identifying the issues in dispute, ascertaining the positions of the parties and exploring the possibility of settlement." 56 Ill. Adm. Code 240.310 (2008). All parties are to be given notice of the fact-finding conference at least 15 days prior to the conference, and each party may be accompanied by the party's attorney. 56 Ill. Adm. Code 240.310(a), (b) (2008).

¶ 26                                                                              B.

¶ 27                    The Department's Enforcement Powers Following Its Investigation

¶ 28 The Act and its regulations not only grant the Department the power to investigate alleged violations of the Act, but also give the Department a list of enforcement remedies it may seek once it determines that there has been a violation of the Act. Section 25(b) of the Act provides as follows:

> "Whenever the Department believes upon investigation that there has been a violation of any of the provisions of this Act or any rules or regulations promulgated under this Act, the Department may: (i) issue and cause to be served on any party an order to cease and desist from further violation of the Act, (ii) take affirmative or other action as deemed reasonable to eliminate the effect of the violation, (iii) collect the amount of any wages, salary, employment benefits, or other compensation denied or lost to the individual, and (iv) assess any civil penalty allowed by this Act. The civil penalties assessed by the Department as well as any other relief requested by the Department shall be recoverable in an action brought in the name of the people of the State of Illinois by the Attorney General." 820 ILCS 185/25(b) (West 2010).

¶ 29 The regulations further provide that the Department may seek a voluntary settlement with the contractor that eliminates the unlawful practice and provides appropriate relief; recommend the commencement of a civil action; issue a cease-and-desist order; assess civil penalties; collect denied or lost wages, salary, employment benefits, or compensation owed to the employee; place the contractor on a debarment list pursuant to section 42 of the Act (820 ILCS 185/42 (West 2010)); and/or take any other reasonable action to eliminate the unlawful practice and/or remedy the effect of the violation. 56 Ill. Adm. Code 240.510 (2008).

¶ 30 When the Department makes a decision that a violation has occurred and has determined to seek remedies for the violation, it must send a notice to all parties. 56 Ill. Adm. Code 240.500(c) (2008). The Act's regulations require the Department to "seek voluntary compliance by the contractor for any violations of the Act," but if "the contractor fails to pay the penalties or comply with the remedies specified in the notice within 30 calendar days, the Department may within 180 days refer the matter to the Attorney General for enforcement." 56 Ill. Adm. Code 240.500(d) (2008). Section 35 of the Act states that, if a contractor refuses to obey a "valid order of the Department issued under this Act," the Department can obtain a court order commanding the contractor to obey the order or be adjudged guilty of contempt of court and punished accordingly. 820 ILCS 185/35 (West 2010).

¶ 31 The contractor can seek a review of the Department's final determination by filing a written request for an "informal conference" with the Director of the Department. 56 Ill. Adm. Code 240.500(e) (2008). The informal conference will be conducted by the Director and/or the Department's chief legal counsel. 56 Ill. Adm. Code 240.500(e)(1) (2008). At the informal conference, the contractor can "present written or oral information and arguments as to why the Department's final determination should be amended or reconsidered." 56 Ill. Adm. Code 240.500(e)(1) (2008).

¶ 32 Section 42 of the Act provides that when the Department determines that the contractor has committed a second or subsequent violation within five years of an earlier violation, the Department must place the contractor on a debarment list posted on its official website. 820 ILCS 185/42 (West 2010). Specifically, "the Department shall add the employer or entity's name to a list to be posted on the Department's official website. Upon such notice, the Department shall notify the violating employer or entity. No state contract shall be awarded to an employer or entity appearing on the list until 4 years have elapsed from the date of the last violation." 820 ILCS 185/42 (West 2010); 56 Ill. Adm. Code 240.530 (2008).

¶ 33                                          II.

¶ 34                            Procedural Due Process

¶ 35 The plaintiffs maintain that the statutory and regulatory scheme under the Act is facially unconstitutional under the due process clauses of the United States Constitution and the Illinois Constitution. The plaintiffs do not challenge the Act as applied, only on its face. Specifically, the plaintiffs maintain that the Act and its regulations grant the Department the power to impose significant penalties and sanctions upon its finding of a violation of the Act, but the Act does not provide an accused with a sufficient hearing during the Department's investigative process.

¶ 36 We begin our constitutional analysis with the presumption that the statute is constitutional. *Irwin Industrial Tool Co.*, 238 Ill. 2d at 340, 938 N.E.2d at 465. A statute is facially unconstitutional only if " 'no set of circumstances exists under which the Act would be valid. The fact that the [statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid' " except in the context of the first amendment. *In re C.E.*, 161 Ill. 2d 200, 210-11, 641 N.E.2d 345, 350 (1994) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). "[A] challenge to the facial validity of

a statute is the most difficult challenge to mount successfully \*\*\*." *People v. One 1998 GMC*, 2011 IL 110236, ¶ 20, 960 N.E.2d 1071.

¶ 37　　While we must construe a statute so as to uphold its constitutionality if it is reasonably possible to do so (*Irwin Industrial Tool Co.*, 238 Ill. 2d at 340, 938 N.E.2d at 465), this rule of construction is not a license to rewrite legislation. *In re Branning*, 285 Ill. App. 3d 405, 410, 674 N.E.2d 463, 467 (1996). Nonetheless, we will resolve any doubt as to the statute's construction in favor of its validity. *People v. Boeckmann*, 238 Ill. 2d 1, 6-7, 932 N.E.2d 998, 1001 (2010).

¶ 38　　The plaintiffs' due process challenge raises procedural due process concerns. The due process clauses of the United States and Illinois Constitutions provide that the State may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. The guarantee of due process normally compels the government to provide notice and an opportunity to be heard before a person is deprived of property. *United States v. James Daniel Good Real Property*, 510 U.S. 43, 47 (1993).

¶ 39　　"Procedural due process claims concern the constitutionality of the specific procedures employed to deny a person's life, liberty or property." *Segers v. Industrial Comm'n*, 191 Ill. 2d 421, 434, 732 N.E.2d 488, 496 (2000). Procedural due process is meant to protect people from the mistaken or unjustified deprivation of life, liberty, or property, not from the deprivation itself. *Id*. "To survive a facial challenge, the procedures a statute incorporates must at least be adequate to authorize the deprivation with respect to some of the persons subject to it." *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 318, 753 N.E.2d 1032, 1043 (2001). "At a minimum, due process requires that a deprivation of property cannot occur without providing notice and an opportunity for a hearing appropriate to the nature of the case." *Id*.

¶ 40　　"Due process of law is served where there is a right to present evidence and argument in one's own behalf, a right to cross-examine adverse witnesses, and impartiality in rulings upon the evidence which is offered." *Piotrowski v. State Police Merit Board*, 85 Ill. App. 3d 369, 373, 406 N.E.2d 863, 866 (1980). "Before a person is deprived of a protected interest, he must be afforded opportunity for some kind of a hearing, 'except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.' " *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 n.7 (1972) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)). A fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

¶ 41　　In evaluating procedural due process claims, the court uses a three-part test, under which the court (1) asks the threshold question whether there exists a liberty or property interest which has been interfered with by the State, (2) examines the risk of an erroneous deprivation of such an interest through the procedures already in place, while considering the value of additional safeguards, and (3) addresses the effect the administrative burden would have on the State's interest. *Segers*, 191 Ill. 2d at 434, 732 N.E.2d at 496. However, as the Department notes, these procedural safeguards are not triggered unless and until an agency is adjudicating legal rights. *Securities & Exchange Comm'n v. Jerry T. O'Brien, Inc.*, 467

U.S. 735, 742 (1984) (the due process clause is not implicated when an administrative agency, without notifying a person under investigation, uses its subpoena power to gather evidence; the due process clause is not implicated under such circumstances because an administrative investigation adjudicates no legal rights).

¶ 42    In response to the plaintiffs' procedural due process argument, the Department maintains that its role under the Act is limited to an investigatory function and that it has no power to adjudicate any claim that a contractor has misclassified an employee. The Department notes that it is not authorized to issue a final administrative determination that is subject to judicial review under the Administrative Review Law (735 ILCS 5/3-101 to 3-113 (West 2010)). Instead, the Department argues that if its investigation leads it to a finding that there is a violation of the Act, it may take reasonable action to eliminate or remedy the violation by seeking, among other things, a voluntary settlement, issue a cease-and-desist order, assess civil penalties, or collect the employee's lost wages or benefits. 820 ILCS 185/25(b) (West 2010). It argues that these powers are not adjudicatory powers. The Department cites *World Painting Co. v. Costigan*, 2012 IL App (4th) 110869, 967 N.E.2d 485, in support of its argument that it has no adjudicatory powers, only investigative powers, under the Act.

¶ 43    In *World Painting Co.*, the trial court enjoined the Department from enforcing the Act against the plaintiffs based on our decision in *Bartlow v. Shannon*, 399 Ill. App. 3d 560, 927 N.E.2d 88 (2010). On appeal, the *World Painting Co.* court noted that the requirements of notice and the opportunity to be heard are not implicated by executive action that cannot result in an administrative adjudication of rights. *World Painting Co.*, 2012 IL App (4th) 110869, ¶ 15, 967 N.E.2d 485. In that case, the Department entered into an agreement with the plaintiff that, under the Act, it could "only conduct a no-consequences investigation." *Id*. ¶ 22, 967 N.E.2d 485. The court described the parties' agreed interpretation of the Act as follows:

> "Defendants liken the Department's role to that of the police in a criminal investigation. The Department, according to defendants, may subpoena witnesses and documents and inspect businesses toward determining whether to recommend the commencement of an action for civil or criminal penalties in the trial court. If the Department found a violation, defendants' interpretation would allow the Department to conduct informal negotiations with a firm toward settling on a penalty. However, if the firm were unwilling to negotiate, the Department's sole recourse would be in '*de novo*' court proceedings in which the Department's findings would be inadmissible. Defendants argue the Department's investigation under the Act does not require due-process protections such as notice and an opportunity to be heard because the Department itself cannot adjudicate a firm's rights or liabilities." *Id.* ¶ 22, 967 N.E.2d 485.

¶ 44    The *World Painting Co.* court reversed the trial court's injunction because "[t]he parties have agreed to a constitutional plan for conducting their interaction as the Department investigates plaintiff's possible violations of the Act." *Id*. ¶ 24, 967 N.E.2d 485. Under the parties' agreement, "the Department is forbidden from making any adjudicatory findings of plaintiff's liability." *Id*. Accordingly, the court concluded that "due process is not implicated by the Department's investigation in this case." *Id*.

-9-

¶ 45    When the present case came before this court in *Bartlow*, the Department argued that the Act met the requirements of procedural due process because any party can request an "informal conference" after the Department issues its final determination, and the contractor may present written or oral information and arguments at this informal conference. *Bartlow*, 399 Ill. App. 3d at 572, 927 N.E.2d at 99. We concluded that this procedure appeared to be inadequate because the Act authorized the Department, upon its finding of a violation, to issue cease-and-desist orders, assess civil penalties, and levy other sanctions, but the informal conference did not provide the contractor with an opportunity to confront accusers, examine witnesses, or inspect the evidence offered against it. *Id.*

¶ 46    In the present appeal, the Department advances an interpretation of the Act that is similar to the parties' agreed interpretation in *World Painting Co.* The Department maintains that it has no adjudicatory power; it investigates but has no authority outside of court to enforce any finding that there has been a violation of the Act. In addition, any circuit court proceeding to enforce the Act is a *de novo* proceeding in which the Department has the burden of proving a violation of the Act. Also, the Department maintains that, pursuant to section 80 of the Act (820 ILCS 185/80 (West 2010)), its finding that there has been a violation of the Act is not admissible in a court proceeding seeking sanctions for a violation of the Act. The Department describes its investigative power as a "no consequences power," meaning that there are no consequences as a result of its investigation and no change in status. The Department's power to assess fines under the Act, the Department argues, is merely the power to ask the contractor to settle the matter outside of court. Its assessment of fines can be ignored by the contractor with no consequences. Once the Department brings an action in the circuit court and proves that a violation of the Act has occurred, the circuit court will decide whether any fines or sanctions should be assessed and, if so, what they should be.

¶ 47    The circuit court disagreed with the Department's interpretation of the statute because, under its reading of the Act, it grants the Department the power to assess penalties and sanctions. Nonetheless, the circuit court cited *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 687 N.E.2d 1050 (1997), and held that the Act was not facially unconstitutional because "[t]he Department is not precluded from giving Plaintiffs notice and a hearing if it so chooses."

¶ 48    In *East St. Louis*, the supreme court addressed a statute that gave an oversight panel the authority to remove school board members from their office for failure to follow a valid order of the panel. *Id.* at 405-06, 687 N.E.2d at 1055-56. The supreme court held that when the oversight panel exercised its power to terminate the term of a school board member's term of office, it must afford the office holder due process. *Id.* at 418-19, 687 N.E.2d at 1061. However, the court noted that the statute did not provide any notice and procedure requirements, which created a great risk of erroneous deprivation of a school board member's rights. *Id.* at 419, 687 N.E.2d at 1062. The court held that the school board member was entitled to notice of the panel's pending decision to remove him or her from office and was entitled to procedural safeguards. *Id.* at 420, 687 N.E.2d at 1062.

¶ 49    Nonetheless, the supreme court held that the statute was not unconstitutional on its face

because nothing in the statute prevented the panel from giving the school board member notice and a hearing before removing him from office. *Id.* at 421, 687 N.E.2d at 1063. The court stated, "Given that the Panel was free to give notice or hearing if it so chose, [the statute] is not facially unconstitutional." *Id.*

¶ 50    In the present case, the Department agrees that if the Act authorized it to adjudicate liability, procedural safeguards would be necessary. We share the circuit court's concern that the language of the statute grants the Department more than investigatory powers. However, as the supreme court emphasized in *East St. Louis*, we must interpret statutes as constitutional if we can reasonably do so. *Id.* Therefore, we adopt the interpretation of the Act offered by the Department and hold that the statute is not facially unconstitutional under the due process clause.

¶ 51    Under the Department's interpretation of the Act, it functions only in an investigative role. If it finds that a violation of the Act has occurred, it has no power to assess any fines or impose any sanctions, but can only seek a voluntary settlement with and compliance by the contractor. If the Department cannot reach an agreement with the contractor, it must seek any penalties, sanctions, or other remedies by bringing an action in the circuit court. The Department has the burden of proving a violation of the Act, and the circuit court decides if penalties or sanctions are justified and what penalties, sanctions, or other remedies to impose.

¶ 52    Section 80 of the Act states that the Department's "finding made pursuant to this Act is for the purpose of enforcing this Act and may not be admissible or binding against a party in any *other* proceeding." (Emphasis added.) 820 ILCS 185/80 (West 2010). The Department interprets section 80 of the Act to mean that its findings are not admissible in *any* court proceeding, including an action brought by the Department pursuant to the authority provided in section 25 of the Act. In addition, although the Act authorizes the Department to serve "an order to cease and desist from further violation of the Act," under the Department's interpretation of the Act, this is a no-consequences order that does not change the status of the parties.

¶ 53    The Department's interpretation of the Act clearly meets due process requirements because a contractor accused of violating the Act is afforded all of the due process protections contained in the Code of Civil Procedure (735 ILCS 5/1-101 to 22-105 (West 2010)) and the Code of Criminal Procedure of 1963 (725 ILCS 5/100-1 to 126-1 (West 2010)) before he or she can be deprived of life, liberty, or property. Accordingly, we affirm the circuit court's decision, holding that the Act is not facially unconstitutional under the due process clauses of the United States and Illinois Constitutions.

¶ 54                                    III.

¶ 55            Vagueness/Unlawful Delegation of Legislative Power

¶ 56    The next argument the plaintiffs raise is that the Act is unconstitutionally vague under the due process clauses of the United States and Illinois Constitutions. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. The plaintiffs also argue that the statute's criteria for nonemployees are so vague, indefinite, and uncertain that they impermissibly delegate legislative power to the Department. See Ill. Const. 1970, art. II, § 1 ("No branch shall

-11-

exercise powers properly belonging to another."). We disagree with the plaintiffs' assertions.

¶ 57 The issue of vagueness as it relates to due process and the question of unlawful delegation of legislative authority are issues that are intertwined. *People v. Gurell*, 98 Ill. 2d 194, 210, 456 N.E.2d 18, 25 (1983). A statute is unconstitutionally vague if it does not provide sufficient standards to guide the administrative body in the exercise of its functions. *Id*. A statute must be sufficiently clear to (1) provide people of ordinary intelligence with reasonable opportunity to understand what conduct it prohibits so that one may act accordingly and (2) provide reasonable standards to restrict the discretion of governmental authorities who apply the law. *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 928, 936 N.E.2d 623, 647 (2010).

¶ 58 With respect to unlawful delegation of legislative power, the statute in question must identify three factors: (1) the persons or activities potentially subject to regulation, (2) the harm sought to be prevented, and (3) the general means available to the administrator to prevent the identified harm. *Gurell*, 98 Ill. 2d at 210-11, 456 N.E.2d at 25. "While the legislature cannot delegate its legislative power to determine what the law should be, it may delegate the authority to execute the law." *East St. Louis*, 178 Ill. 2d at 423, 687 N.E.2d at 1063.

¶ 59 In the present case, the Act is neither unconstitutionally vague nor an unlawful delegation of legislative power. The statute clearly defines the persons subject to its regulation. 820 ILCS 185/5 (West 2010). It contains detailed standards to guide the Department and the circuit court in determining whether a contractor has misidentified an employee as an independent contractor. 820 ILCS 185/10 (West 2010). The language of the Act provides a contractor of reasonable intelligence the opportunity to understand what conduct it prohibits and is specific enough to restrict arbitrary and discriminatory enforcement by the Department. 820 ILCS 185/20 (West 2010). The harm sought to be prevented by the Act is clearly defined (820 ILCS 185/3 (West 2010)) and is also evident from its provisions.

¶ 60 As noted above, the Department's role under the Act is limited to an investigative role. Its enforcement powers are limited to either a settlement with the contractor or the filing of a *de novo* court proceeding in which it has the burden of proving a violation of the Act. If the Department proves a violation, the fines, sanctions, and remedies that the circuit court can order are spelled out in section 25 of the Act. 820 ILCS 185/25 (West 2010). This legislative scheme sets out sufficient standards and is not an improper delegation of legislative authority or unconstitutionally vague.

¶ 61 Section 10(a) of the Act states that "an individual performing services for a contractor is deemed to be an employee of the employer except as provided in subsections (b) and (c) of this Section." 820 ILCS 185/10(a) (West 2010). Subsection (b) provides that an

"individual performing services for a contractor is deemed to be an employee of the contractor unless it is shown that:

(1) the individual has been and will continue to be free from control or direction over the performance of the service for the contractor, both under the individual's contract of service and in fact;

(2) the service performed by the individual is outside the usual course of services

-12-

performed by the contractor; and

> (3) the individual is engaged in an independently established trade, occupation, profession or business; or

> (4) the individual is deemed a legitimate sole proprietor or partnership under subsection (c) of this Section." 820 ILCS 185/10(b) (West 2010).

¶ 62    Subsection (c) provides that the

"sole proprietor or partnership performing services for a contractor as a subcontractor is deemed legitimate if it is shown that:

> (1) the sole proprietor or partnership is performing the service free from the direction or control over the means and manner of providing the service, subject only to the right of the contractor for whom the service is provided to specify the desired result;

> (2) the sole proprietor or partnership is not subject to cancellation or destruction upon severance of the relationship with the contractor;

> (3) the sole proprietor or partnership has a substantial investment of capital in the sole proprietorship or partnership beyond ordinary tools and equipment and a personal vehicle;

> (4) the sole proprietor or partnership owns the capital goods and gains the profits and bears the losses of the sole proprietorship or partnership;

> (5) the sole proprietor or partnership makes its services available to the general public or the business community on a continuing basis;

> (6) the sole proprietor or partnership includes services rendered on a Federal Income Tax Schedule as an independent business or profession;

> (7) the sole proprietor or partnership performs services for the contractor under the sole proprietorship's or partnership's name;

> (8) when the services being provided require a license or permit, the sole proprietor or partnership obtains and pays for the license or permit in the sole proprietorship's or partnership's name;

> (9) the sole proprietor or partnership furnishes the tools and equipment necessary to provide the service;

> (10) if necessary, the sole proprietor or partnership hires its own employees without contractor approval, pays the employees without reimbursement from the contractor and reports the employees' income to the Internal Revenue Service;

> (11) the contractor does not represent the sole proprietorship or partnership as an employee of the contractor to its customers; and

> (12) the sole proprietor or partnership has the right to perform similar services for others on whatever basis and whenever it chooses." 820 ILCS 185/10(c) (West 2010).

¶ 63    The language of section 10 provides contractors with sufficient guidance to allow them to meet the requirements of the Act. A person working for a contractor can qualify as an

independent contractor under subsection (b) or subsection (c). The contractor can determine, prior to entering into a subcontract, whether a person performing work qualifies as an independent contractor under either section. If not, then the person has to be treated as an employee. Although some of the information in subsection (c) is solely within the control of the potential subcontractor at the time the contracts are entered into, the plaintiffs do not explain why a contractor cannot require the subcontractor to furnish the information before entering into the subcontract to ensure that he or she is properly classified as either an independent contractor or an employee.

¶ 64   Accordingly, the Act provides contractors of ordinary intelligence with a reasonable opportunity to understand what conduct it prohibits and provides reasonable standards to restrict the discretion of governmental authorities who apply the law. Because the language of the statute defines the individuals who are potentially subject to its regulation, the harm it seeks to prevent, and the general means available to the Department to prevent the identified harm, it does not improperly delegate legislative authority and is not unconstitutionally vague.

¶ 65                                    IV.

¶ 66                    Equal Protection/Special Legislation

¶ 67   The plaintiffs' final arguments are that the Act violates the special legislation clause of the Illinois Constitution and the equal protection clauses of the United States and Illinois Constitutions.

¶ 68   "The special legislation clause [(Ill. Const. 1970, art. IV, § 13)] expressly prohibits the General Assembly from conferring a special benefit or exclusive privilege on a person or a group of persons to the exclusion of others similarly situated." *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 390-91, 689 N.E.2d 1057, 1069 (1997). The special legislation clause is designed to prevent arbitrary classifications by the legislature that discriminate in favor of a select group without a sound, reasonable basis. *Id.* at 391, 689 N.E.2d at 1069-70. A special legislation challenge and an equal protection challenge are generally judged under the same standards. *Id.* at 393, 689 N.E.2d at 1070.

¶ 69   The equal protection clauses in the federal and Illinois constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2) require the government to treat similarly situated individuals in a similar manner. *Byrd v. Hamer*, 408 Ill. App. 3d 467, 490, 943 N.E.2d 115, 136 (2011). The analysis is the same under both the United States and Illinois Constitutions. *Jacobson v. Department of Public Aid*, 171 Ill. 2d 314, 322, 664 N.E.2d 1024, 1028 (1996). The guarantee of equal protection "does not preclude the State from enacting legislation that draws distinctions between different categories of people, but it does prohibit the government from according different treatment to persons who have been placed by a statute into different classes on the basis of criteria wholly unrelated to the purpose of the legislation." *Id*.

¶ 70   The parties agree that the court is to employ a rational basis review in reviewing the plaintiffs' equal protection challenge. See *Clark v. Jeter*, 486 U.S. 456, 461 (1988). To withstand rational basis scrutiny, the statutory classification must be rationally related to a

legitimate government purpose. *Id*. Under the rational basis test, we give high deference to the judgments made by the legislature. *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 125, 810 N.E.2d 13, 26 (2004). "So long as there is a conceivable basis for finding the statute rationally related to a legitimate state interest, the law must be upheld." *Id.* at 126, 810 N.E.2d at 26. The "standards used to determine an equal protection claim are also applicable when evaluating a claim that the statute constitutes special legislation under our Illinois constitution." *American National Bank & Trust Co. of Chicago v. Anchor Organization for Health Maintenance*, 210 Ill. App. 3d 418, 425, 569 N.E.2d 128, 133-34 (1991).

¶ 71     The plaintiffs argue that the Act is unconstitutional because it creates differential treatment of laborers in the construction industry as opposed to laborers in other fields, and this differential treatment is not rationally related to the goals of the legislation. We disagree and believe that the statute passes constitutional muster under equal protection and special legislation standards.

¶ 72     As noted above, the Act was enacted "to address the practice of misclassifying employees as independent contractors." 820 ILCS 185/3 (West 2008). The State has a legitimate interest in preventing employee misclassification because employees who are misclassified as independent contractors lose the benefit of worker protection laws, including minimum wage, discrimination, and occupational safety laws. In addition, the State has an interest in the revenue it loses from the misclassification, including unemployment insurance contributions and payroll taxes. The State also has an interest in seeing that contractors who properly classify employees are not at a competitive disadvantage to contractors who misclassify employees. The provisions of the Act are rationally related to these legitimate interests.

¶ 73     The Act creates an incentive for contractors to properly classify individuals as employees. Although the statute is limited to the construction industry, this limitation does not establish an equal protection or special legislation violation. The legislature was not required to address misclassification across all industries before it could address misclassification in any industry. Equal protection does not require "the legislature to address all areas of a problem that it seeks to reform." *In re Petition to Adopt O.J.M.*, 293 Ill. App. 3d 49, 64, 687 N.E.2d 113, 123 (1997). The legislature is entitled to implement reform one step at a time. *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 372-73, 489 N.E.2d 1374, 1384 (1986). The General Assembly could rationally believe that statutory intervention was more urgently needed for employees in the construction industry. *Id.* at 372, 489 N.E.2d at 1384.

¶ 74     Whether the issue of misclassification is most prevalent in the construction industry is a policy decision that we must defer to the legislature because "we are not concerned with the wisdom of the statute or even if it is the best means to achieve the goal, but only with whether there is any sort of conceivable basis for finding the statute rationally related to a legitimate state interest." *People v. Gale*, 376 Ill. App. 3d 344, 359, 876 N.E.2d 171, 186 (2007). In addition, the legislature " 'may confine its restrictions to those classes of cases where the need is deemed to be the clearest.' " *Chicago Real Estate Board v. City of Chicago*, 36 Ill. 2d 530, 545, 224 N.E.2d 793, 803 (1967) (quoting *Gadlin v. Auditor of Public Accounts*, 414 Ill. 89, 98, 110 N.E.2d 234, 238 (1953)). Accordingly, in the present case, the legislature was free to limit the application of the Act to the construction industry

without offending the equal protection clauses or violating the prohibition against special legislation. *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 489 (1955) ("The legislature may select one phase of one field and apply a remedy there, neglecting the others.").

¶ 75                                    CONCLUSION

¶ 76      For the foregoing reasons, we affirm the circuit court's judgment granting a summary judgment in favor of the Department.

¶ 77      Affirmed.